**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
_____

WUILMER E. NAVARRO GOMEZ,

        Plaintiff,

v.                                             **MEMORANDUM OF LAW & ORDER**
                                     Civil File No. 06-345 (MJD/SRN)

BODYCOTE THERMAL PROCESSING, INC.,

        Defendant.
_____

James H. Kaster and Sofia B. Andersson, Nichols Kaster & Anderson, PLLP, Counsel for Plaintiff.

Gina K. Janeiro and Thomas E. Marshall, Jackson Lewis LLP, Counsel for Defendant.
_____

## I.    INTRODUCTION

This matter is before the Court on Defendant Bodycote Thermal Processing, Inc.'s Motion for Summary Judgment. [Docket No. 20] The Court heard oral argument on January 17, 2007.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    Parties

Plaintiff Wuilmer Navarro Gomez ("Navarro") is a native and citizen of

Honduras and is of Hispanic origin.

Defendant Bodycote Thermal Processing, Inc. ("Bodycote") is a company that provides commercial heat treating services for metal.  One of its heat treating facilities is located in Eden Prairie, Minnesota.  Bodycote treats metal in various furnaces and at various temperatures to provide different levels of hardening to metal.  Each furnace is operated by a Furnace Operator, and General Helpers assist the Furnace Operators as needed.

Robert Manhatton is Bodycote's Division Manager for the Eden Prairie facility.  Scott Sandrock is the Eden Prairie Plant Manager.  Brian Lillquist is the second shift supervisor and was Navarro's direct supervisor.

Bodycote employs approximately 45 employees at its Eden Prairie facility and most positions are filled through a temporary agency on a temp-to-hire basis. If a temporary employee completes 500 hours and is performing the job in a satisfactory manner, Bodycote will offer permanent employment to the temporary employee.  Once Bodycote makes an offer for permanent employment, the employee must submit to a physical exam, drug test, and background check, and must receive positive employment references.  It is usually Bodycote's intent when hiring temporary employees that they will become permanent.

### 2.      Relevant Positions at Bodycote

A Furnace Operator runs the furnace, adjusting the appropriate gas

mixtures, temperature, and time for the particular project.  The Furnace Operator

must read and understand multiple written processing instructions and enter

special instructions into a computer.  The Furnace Operator also inspects the

material after the treatment to ensure that it has responded properly.

The General Helper's main task is to load customer parts into baskets and

then take the parts out of the baskets when the heat treatment is finished and put

them back into the customer's containers.  It is the lowest skilled position at

Bodycote and is under the supervision of the Furnace Operator and the shift

leader.

Lillquist, Navarro's direct supervisor, testified that Navarro was not qualified

for the Furnace Operator position; however, he also testified that Navarro was

qualified to receive training as a Furnace Operator.  Lillquist also testified that

"[t]here was a language issue barrier.  He had a hard time communicating.  I had

a hard time understanding him, because his English skills are very limited."

(Lillquist Dep. 24.)

### 3.    Navarro's Initial Employment with Bodycote

Express Personnel, a temporary staffing agency, assigned Navarro to the

open second shift General Helper position at Bodycote on July 26, 2004.  When

Navarro began working at Bodycote, he was trained for the General Helper

position.  As a General Helper, Navarro never operated a furnace.  He had no

problems with his supervisor and no problems with any other employees until just prior to his termination.  Until he was terminated on May 5, 2005, Navarro never received any verbal or written warning or discipline while at Bodycote.

### 4.   Bodycote's Application Process

Bodycote presents evidence that it announces all open positions to its employees by posting notices on a bulletin board.  Bodycote states that it usually advertises the position internally for five to fifteen days, and if the position is not filled, Bodycote will call a temporary employment agency for a worker.  Navarro knew that Bodycote had bulletin board where it posted open positions.

Bodycote asserts that it requires that an employee interested in a particular job opening must notify Bodycote in writing.  The writing does not have to be in any particular form, but must ensure that the employee and management know of the employee's interest.  This requirement is noted on the job posting itself. Bodycote states that it does not give an employee a posted position without written expression of interest.

During the time Navarro worked for Bodycote open Furnace Operator positions were posted in September 2004, November 2004, and January 2005 but Navarro made no written application specifically in response to a particular job posted on the bulletin board.  Navarro avers that he never saw a Furnace Operator job posting on the bulletin board and admits that he never expressed his

interest in a Furnace Operator position in writing.

### 5.    Navarro's Application for Permanent Employment

On November 4, 2004, after Navarro had worked 500 hours at Bodycote, he filled out an application for permanent employment.  In the application, he stated that he was applying for any "open" position.  Bodycote understood that to mean that Navarro "was willing to take any job."  (Manhatton Dep. 69.)

### 6.    Persons Hired as Furnace Operators

During Navarro's time at Bodycote, it never offered him a Furnace Operator position.  Navarro claims that three similarly-situated non-Hispanic persons were hired as Furnace Operators during that time.

### a.    Amel Omerovic

Amel Omerovic completed a Bodycote job application on November 9, 2004.  In the application, he applied for "eny [sic] job."  Omerovic is white and from Bosnia.  He was hired as a temporary employee on January 17, 2005. Bodycote originally hired Omerovic as a temp-to-hire Furnace Operator trainee. He was specifically hired with the intent of becoming a Furnace Operator, although he started off working at a General Helper pay level.  Omerovic began working as a permanent Furnace Operator on May 30, 2005.

### b.    Son Ngoc Tran

Son Ngoc Tran filled out his application on November 30, 2004, and did not

specify any position for which he was applying.  Tran is Asian.  Tran was hired as a

temporary employee on September 5, 2004, and was hired as a permanent

employee on January 3, 2005.  He was hired by Bodycote as a General Helper in

training to be a Furnace Operator and was promoted to the permanent Salt Pot

position, which is a type of Furnace Operator position, on January 3, 2005.

### c.    Abdullahi Abdille

On April 7, 2005, Abdullahi Abdille filled out a job application for a Furnace

Operator position.  Abdille was originally hired by Bodycote as a temporary

General Helper on September 26, 2004.  Abdille was hired as a permanent

Furnace Operator on May 30, 2005.  According to Navarro, he helped to train

Abdille as a General Helper.  Abdille is African-American and from Somalia.

Although there is testimony that Abdille was originally hired to be trained to be a

Furnace Operator, Bodycote stated in a letter to the Equal Employment

Opportunity Commission ("EEOC") that it offered the Furnace Operator position

to Abdille on a temp-to-hire basis after he was already working for Bodycote as a

General Helper and had expressed interest in the Furnace Operator position.

### d.    Hispanic Furnace Operators

Navarro testified that, during the time he worked at Bodycote, there were

no Hispanic Furnace Operators.

Bodycote avers that during the years 2004 through 2005, Bodycote

employed three Hispanic Furnace Operators: Mario Cabrera, hired in 1994 and terminated on June 18, 2006, Hilda Ojeda, hired February 2003 and terminated October 15, 2005, and Esther Keaton, hired October 13, 2003 and still employed. However, in Bodycote's June 24, 2005, letter to the EEOC, it represented that it employed two Hispanic employees who were, at that time, being trained for Furnace Operator positions.  Thus, according to the letter, Bodycote employed no permanent Hispanic Furnace Operators during the time Navarro was employed at Bodycote.

### 7.    Navarro's Interest in a Furnace Operator Position

Navarro testified that, in March 2005, he became aware of an open Furnace Operator position in his shift.  He suspected that there were three Furnace Operator position openings at that time, one on each shift.  He spoke to Sandrock about possibly filling the position in his shift.  Sandrock stated that he would talk to Lillquist, Navarro's supervisor, about training him for the job because Navarro had no experience.  When the Furnace Operator position on Navarro's shift was filled by another individual, Navarro asked Lillquist if Sandrock had asked him to train Navarro for the position, and Lillquist said that Sandrock had not.  Navarro never received any training for the Furnace Operator position.

On April 7, 2005, Bodycote offered Navarro a permanent position as a General Helper.  Navarro did not accept the General Helper permanent position

because he wanted to work as a Furnace Operator and make more money.  After Navarro declined the permanent General Helper position, he continued to work as a temporary employee.

### 8.    Navarro's EEOC Complaint

On April 20, 2005, Navarro complained to the EEOC that he had been discriminated against by Bodycote.  Navarro did not tell any Bodycote supervisor or manager that he had made a complaint to the EEOC, including Manhatton, Sandrock, or Lillquist.  The only person he told at Bodycote was his co-worker, Abdille.  There is no evidence that Abdille passed this information on to anyone else.

On April 27, 2005, Navarro filed a charge of discrimination against Bodycote with the EEOC, alleging that he was being discriminated against on the basis of national origin and race.

### 9.    Navarro's Termination

On approximately May 4, 2005, Tran told Sandrock that Navarro made a rude gesture and spat at Tran's feet, refused to help him at work, and allegedly cut the laces from shoes stored in Tran's locker.  Navarro admits gesturing and spitting on the floor in front of Tran because Navarro "felt hatred towards him." (Navarro Dep. 78.)

Manhatton and Sandrock testified that Bodycote decided to terminate

Navarro based on Tran's complaints and on Navarro's refusal of the permanent

General Helper position.  On May 5, 2005, at 7:59 a.m., Sandrock sent an email to

Express Personnel to terminate Navarro's assignment.  The email stated:

> We are having a problem with Wuilmer Navarro.
>
> I offered him a full-time position a month ago.  After jacking me around that this or that date would not work out for the pre-hire physical he told me he was not interested unless we offered him a furnace operator position.  His communication and English comprehension skills are limited.  Additionally, he never expressed an interest to me or his Shift Leader.
>
> Today I had another person complain that he is having personal confrontation problems with Wuilmer.  He is not a team player and although he was not caught doing this, he is suspected of damaging this person[']s clothing.
>
> Can you find us a replacement for Wuilmer?  Did you ever have a chance to find anyone for our second shift TI Cell to replace Maria?

At 9:47 a.m., on May 5, Express Personnel informed Navarro that Bodycote

terminated his assignment but, according to Navarro, provided no reason for

Bodycote's decision.  Navarro never received any other assignments from Express

Personnel after his termination from Bodycote.  He has not spoken with anyone

from Bodycote about his termination.

On May 4, 2005, the Minneapolis office of the EEOC mailed notice of

Navarro's charge of discrimination to Bodycote's Human Resources Director in

Dallas, Texas.  Management at the Eden Prairie location learned of the charge on

May 6 or May 7, when the Human Resources Director informed Manhatton of

Navarro's charge.  Sandrock testified that he did not know about the charge until

approximately two weeks after Navarro's termination.

**B.     Procedural Background**

On January 25, 2006, Navarro filed this lawsuit against Bodycote in this

Court.  On April 27, 2006, he filed an Amended Complaint.  He alleges five counts

against Bodycote: Count One: National Origin Discrimination in Violation of Title

VII; Count Two: National Origin Discrimination in Violation of the Minnesota

Human Rights Act ("MHRA"); Count Three: Race, Color, and National Origin

Discrimination in Violation of 42 U.S.C. § 1981; Count Four: Reprisal in Violation

of Title VII; and Count Five: Reprisal Discrimination in Violation of the MHRA.

Bodycote now moves for summary judgment on all counts against it.

**III.   DISCUSSION**

**A.     Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine issue as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue of

material fact.  Celotex, 477 U.S. at 323.  Summary judgment is only appropriate

when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted). "[S]ummary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998) (citations omitted).

**B.    Failure to Promote**

**1.    Introduction**

Navarro claims Bodycote failed to promote him to the Furnace Operator position based on national origin and race in Count One, Title VII; Count Two, MHRA; and Count Three, 42 U.S.C. § 1981.

Bodycote correctly points out that § 1981 does not prohibit discrimination based upon national origin. Zar v. S.D. Bd. of Exam'rs of Psychologists, 976 F.2d 459, 467 (8th Cir. 1992). Rather, it "prohibits purposeful racial discrimination, which includes discrimination solely because of ancestry or ethnic characteristics." Id. (citation omitted). Thus, the Court dismisses Count Three to the extent it is based on national origin discrimination.

**2.    McDonnell Douglas Analysis**

The McDonnell Douglas burden-shifting analysis governs Navarro's claims under Title VII , the MHRA, and § 1981. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); Saulsberry v. St. Mary's Univ. of Minn., 318 F.3d 862,

866 (8th Cir. 2003).

> Under the <u>McDonnell Douglas</u> scheme, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action.  If the employer does so, the burden then shifts back to the plaintiff to demonstrate that the reason was in fact a pretext for discrimination.

> To establish a prima facie case of national origin [or race] discrimination, [the plaintiff] must show that he: (1) is a member of a protected class; (2) applied for the promotion; (3) was qualified for the promotion; and (4) lost the promotion to persons who were not members of the protected class.

<u>Cardenas v. AT & T Corp.</u>, 245 F.3d 994, 998 (8th Cir. 2001) (citations omitted).

Additionally, the position for which the plaintiff applied must have been available.

<u>Rose-Maston v. NME Hosps., Inc.</u>, 133 F.3d 1104, 1109 (8th Cir. 1998).

### 3. Prima Facie Case for Failure to Promote or Hire

#### a. Whether Navarro Was a Member of a Protected Class

Bodycote does not dispute that Navarro is a member of a protected class because he was born in Honduras and is of Hispanic origin.

#### b. Whether Navarro Applied for the Promotion and a Furnace Operator Position Was Available

Bodycote asserts that there was no position for which Bodycote was actually seeking applicants.  It also claims that Navarro failed to actually apply for a specific Furnace Operator position.

### i.      Whether Navarro Applied for a Furnace Operator Position

Navarro claims that he applied for the Furnace Operator position by filling out the written application on November 4, 2004, indicating that he was interested in being hired permanently for any open position. Bodycote understood this to mean that he was willing to take any job. Navarro also notes that in March 2005, he asked Sandrock if he could train in for an available Furnace Operator position.

Navarro asserts that a specific application for a job posted on Bodycote's bulletin board is not necessary. He notes that Omerovic and Tran filled out similar general applications, not specifically mentioning an open Furnace Operator position. However, they both received permanent Furnace Operator positions.

Bodycote responds that all open positions at Bodycote are posted internally on the bulletin board before temporary employees are sought. It also claims that if an employee is interested in a particular posted open position, the employee must notify Bodycote of his or her interest in writing. Finally, it notes that Navarro admits that he never applied in writing for a specific open Furnace Operator position in writing.

Viewing the facts in the light most favorable to Navarro, the Court concludes that he has raised a genuine issue of material fact regarding whether his November 2004 general application, combined with his March 2005 oral

13

communication, were sufficient to "apply" for a Furnace Operator position.  There

is a genuine issue of material fact regarding whether there was an open Furnace

Operator position in March 2005, when Navarro orally expressed interest in a

Furnace Operator position.  Furthermore, Omerovic and Tran both completed

similar general applications before being hired for Furnace Operator positions, and

there is evidence that Abdille was promoted from a General Helper position to a

Furnace Operator position.

### ii.     Whether There Was an Open Furnace Operator Position

Bodycote argues that Navarro cannot show that he applied for a position for

which Bodycote was actually seeking applicants.  It avers that it had three open

Furnace Operator positions available during Navarro's employment in September

2004, November 2004, and January 2005.

Navarro argues that because he submitted his written application for any

open position on November 4, 2004, he need only show that there was an open

Furnace Operator position after that date.  Bodycote's June 24, 2005, letter to the

EEOC represents that Furnace Operator positions became available in January,

February, and March 2005.  Additionally, Navarro testified that there was a

position available in his department when he asked Sandrock for the Furnace

Operator position in March 2005.  Viewing the facts in the light most favorable to

Navarro, there is a genuine issue of material fact regarding whether there were

14

open Furnace Operator positions after November 2004 until the time his employment was terminated.

### c. Whether Navarro Was Qualified for the Position

Bodycote asserts that Navarro was not qualified for the Furnace Operator position.  It points out that Lillquist specifically testified that Navarro was not qualified for the Furnace Operator position.  Rather, he testified that Navarro was qualified to receive training for the Furnace Operator position.  It argues that Lillquist's testimony is consistent with the undisputed facts that Navarro had no qualification, experience, or training for the Furnace Operator position.

Navarro claims that he was qualified because the qualifications, experience, and training necessary for the furnace operator position are acquired on the job and, according to Lillquist, Navarro was qualified to receive training and acquire those skills.

Although Navarro was not qualified for a Furnace Operator position because he had not been trained, he may have been qualified to receive training to become qualified for a Furnace Operator position.  The Court concludes that Navarro has raised a genuine issue of material fact regarding the qualification prong of the prima facie test.

### d. Whether a Similarly-Situated Non-Hispanic Employee Received the Position

Navarro claims that he was similarly situated to Tran, Omerovic, and

15

Abdille.  Bodycote asserts that Navarro was not similarly situated to Tran,

Omerovic, or Abdille because all three of those employees were hired on a temp-

to-hire basis and were initially assigned to Bodycote to train for a Furnace

Operator position.   All three successfully logged the requisite number of hours of

training and had satisfactory performance to qualify for the position.

There is conflicting evidence regarding whether Bodycote initially hired

Abdille as a General Helper in training for the Furnace Operator position or

whether Abdille was hired as a General Helper, like Navarro, and later trained for

Furnace Operator position.  Navarro has raised a genuine issue of material fact

regarding whether similarly-situated non-Hispanic individuals received a

promotion to the Furnace Operator position.

### 4.    Bodycote's Legitimate Nondiscriminatory Reason for Failing to Offer a Furnace Operator Position

Bodycote argues that it failed to offer Navarro the Furnace Operator

position because he did not apply for an open position and he was not qualified

for Furnace Operator position.

### 5.    Pretext

There are at least two routes by which a plaintiff may
demonstrate a material question of fact at this final stage of the
analysis.  First, a plaintiff may succeed indirectly by showing that the
employer's proffered explanation is unworthy of credence, because it
has no basis in fact.  Second, a plaintiff may succeed directly by
persuading the court that a [prohibited] reason more likely
motivated the employer.  Both of these routes, in effect, amount to a

16

showing that the prohibited reason, rather than the proffered reason, actually motivated the employer's action.

Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1120 (8th Cir. 2006) (citations omitted).  Navarro argues that Bodycote's proffered explanation for its failure to offer Navarro a Furnace Operator position is unworthy of credence.

The Court denies Bodycote's motion for summary judgment on his failure to promote claim.  Although Navarro was not qualified to be hired for the Furnace Operator position, there is evidence that he was qualified to receive training for the position, but that, despite both his written and oral expression of interest and available positions, Bodycote failed to train him for a Furnace Operator position. As previously noted, he has raised a genuine question of material fact regarding whether Bodycote did train other, non-Hispanic employees who started as General Helpers to become Furnace Operators.  Additionally, when Navarro applied for any open position on November 4, 2004, he had already satisfied the 500 hours needed to qualify for a permanent position at Bodycote; yet, Bodycote did not offer him a full-time General Helper position until five months later.  In contrast, Tran started as a temporary employee in September 2004 and became a permanent employee in January 2005.  There is also evidence to support Navarro's assertion that, at the time he was employed at Bodycote, no other Hispanic employees held Furnace Operator positions.

### C.    Termination Based on Race or National Origin

17

Navarro does not address termination based on race or national origin.  His Amended Complaint appears to assert a claim for failure to promote based on race or national original and a second claim for retaliation for filing the EEOC charge by terminating his employment.  It does not appear that Navarro is arguing that he was fired based on race or national origin.  However, Bodycote does address this potential claim.  Out of an abundance of caution, the Court, too, addresses this potential allegation.

### 1.    Standard

A plaintiff establishes a prima facie case by showing that: (1) she was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently.  If a prima facie case is established, a burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for firing the plaintiff.  If the employer makes such a showing, the plaintiff must then demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination.

Twymon v. Wells Fargo & Co., 462 F.3d 925, 934-35 (8th Cir. 2006) (citations omitted).

### 2.    Prima Facie Case

#### a.    Whether Navarro Was a Member of a Protected Class

Bodycote does not dispute that Navarro is a member of a protected class.

#### b.    Whether Navarro Met His Employer's Legitimate

18

### Expectations

Bodycote asserts that Navarro did not meet its legitimate expectations after he refused the permanent position that it offered to him and his co-worker told management that Navarro made rude gestures, spat at him, refused to help him, and intimidated him.  Bodycote has a strong argument that, because Navarro admittedly spat on the floor in front of his co-worker, he was no longer qualified for his temporary General Helper position.  However, because Navarro had performed adequately at the General Helper position for many months, the Court concludes that it is more appropriate for the Court to conclude that he was qualified and to address the issue of insubordination in its pretext analysis.

### c.    Whether Navarro Suffered an Adverse Employment Action

Bodycote does not dispute that Navarro suffered an adverse employment action.

### d.    Whether Similarly Situated Employees Were Treated Differently

Bodycote argues that Navarro has not pointed to any similarly situated employees who were treated more favorably.  He has offered no evidence of employees who exhibited threatening behavior, such as spitting, and were not fired.  Navarro did testify that on one occasion, he thought Lillquist and Tran were laughing at him after Tran returned an order to Navarro.  However, this

allegation is not in the same category as spitting at another employee, and there is

no allegation that Navarro complained to management about Lillquist and Tran's

laughter.  The Court concludes that Navarro has not shown that similarly situated

employees were treated differently.  Because Navarro has failed to establish his

prima facie case, his claims fail.  In the interest of thoroughness, the Court

addresses the pretext analysis.

### 3.    Bodycote's Legitimate, Nondiscriminatory Reason for Terminating Navarro

Bodycote asserts that it has articulated a legitimate nondiscriminatory

reason for terminating Navarro: he refused the permanent General Helper

position, and he spat and made a rude gesture at Tran.

### 4.    Pretext

Navarro admits that he spat on the ground in front of Tran because he "felt

hatred toward him."  Because Navarro admittedly exhibited insubordination and

unacceptable workplace behavior and can point to no other employee who

engaged in such egregious behavior and was not fired, he has not shown pretext.

The Eighth Circuit explained, "Our cases have repeatedly held that

insubordination and violation of company policy are legitimate reasons for

termination."  Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999)

(en banc) (citations omitted).  Thus, for example, when an employee shouts,

slams a drawer, and insults his superior, the employer is justified in terminating

him because federal anti-discrimination law "confers no right to be rude." Id. at

1135-36.  When the plaintiff has failed to provide evidence of discriminatory

intent, the Court should not inquire into whether his "conduct was egregious

enough to warrant termination" because "it is not the prerogative of the courts or

a jury to sit in judgment of employers' management decisions." Id. at 1136

(citation omitted).

The Court concludes that Bodycote is entitled to summary judgment on

Navarro's claim that he was terminated based on national origin or race.  Navarro

has not shown that similarly situated employees were treated differently.

Additionally, he cannot show that Bodycote's proffered reasons for firing him -

failure to accept the permanent General Helper position and his admitted

insubordination - were pretextual.

### D.    Retaliation Claims

In Counts Four and Five of his Amended Complaint, Navarro alleges that he

was terminated in retaliation for filing a charge of discrimination with the EEOC,

in violation of Title VII and the MHRA.

### 1.    Standard

To establish a prima facie case of Title VII retaliation, a plaintiff must show:

(1) he engaged in activity protected by Title VII; (2) his employer took an adverse

employment action against him; and (3) a causal connection existed between the

protected activity and the adverse employment action.  <u>Henthorn v. Capitol</u>

<u>Commc'ns, Inc.</u>, 359 F.3d 1021, 1028 (8th Cir. 2004).  Once a plaintiff has

established a prima facie case of retaliation, the employer must articulate a

legitimate, nondiscriminatory reason for its action.  <u>Id.</u>  The plaintiff then has the

burden to show that the articulated reason was pretext; in other words, he must

raise a genuine issue of material fact regarding whether the employer in fact took

an adverse employment action because of her protected activity.  <u>Id.</u>  Minnesota

courts analyzes MHRA reprisal claims under the same burden-shifting formula

used in Title VII actions.  <u>Fletcher v. St. Paul Pioneer-Press</u>, 589 N.W.2d 96, 101

(Minn. 1999).

### 2.      Prima Facie Case for Retaliation

#### a.      Whether Navarro Engaged in a Protected Activity

The parties agree that Navarro engaged in protected conduct by filing his

charge of discrimination with the EEOC.

#### b.      Whether Navarro Suffered an Adverse Employment Action

The parties agree that Bodycote took an adverse employment action against

Navarro when it terminated his employment.

#### c.      Whether a Causal Connection Exists

"An inference of a causal connection between a charge of discrimination

and termination can be drawn from the timing of the two events, but in general

more than a temporal connection is required to present a genuine factual issue on

retaliation." Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1119 (8th Cir. 2006)

(citation omitted).  When the protected activity occurs close in time to the

adverse employment action, such as two weeks, the plaintiff generally meets the

causal connection prong of the prima facie case.  Smith v. Allen Health Sys., Inc.,

302 F.3d 827, 833 (8th Cir. 2002).

Navarro notes that he filed his EEOC charge on April 27, 2005, and was

terminated approximately one week later, on May 5, 2005.  He claims that this

close temporal proximity is sufficient to meet the causal connection requirement.

He acknowledges that the EEOC did not mail notice of his charge to Bodycote

until May 4, 2005, and does not challenge Bodycote's evidence that it did not

receive notice of the charge from the EEOC until at least May 6, the day after it

fired him.  However, he notes that he testified that he told Abdille that he had

gone to the EEOC and filed a discrimination charge against Bodycote.  He

theorizes that Bodycote could have learned of the charge from Abdille.

There is no evidence that Bodycote knew of Navarro's protected activity at

the time it terminated his employment.  See Kunferman v. Ford Motor Co., 112

F.3d 962, 965-66 (8th Cir. 1997) (holding MHRA retaliation plaintiff failed to

present a genuine issue of material fact as to causation when there was no

evidence that the decision-maker who took the adverse action had knowledge of

her protected activity and holding that such a plaintiff "must substantiate her allegations with sufficient probative evidence based on more than mere speculation, conjecture, or fantasy.") (citation omitted).  Although Navarro avers that he told Abdille about his EEOC charge, he presents no evidence that Abdille might have passed that information on to any decision-maker at Bodycote. Navarro testified that he did not tell any managers or supervisors that he had filed the discrimination charge.  He offers no evidence to contradict Bodycote's evidence that it did not receive notice that he had filed his EEOC claim until after it fired him.

The Court concludes that Navarro has failed to meet the causal connection prong of the prima facie case.  Because Bodycote was unaware of Navarro's protected activity, then temporal proximity between the activity and the termination do not give rise to an inference of causation.  Because Navarro has failed to meet the prima facie case, Bodycote's motion for summary judgment on Counts Four and Five is granted.  In the interest of thoroughness, the Court also analyzes Navarro's pretext argument.

### 3.    Whether Bodycote Has Articulated a Legitimate Reason for Its Action

Bodycote claims that it had a legitimate reason to discharge Navarro because he refused the permanent General Helper position and spat at Tran.  It is undisputed that Navarro did spit at Tran and that Tran complained about

Navarro's behavior to management directly before Bodycote fired Navarro.

### 4.    Whether Bodycote's Articulated Reason Is Pretextual

"An employee can prove pretext by showing the employer meted out more lenient treatment to similarly situated employees . . . who did not engage in protected activity." Smith v. Allen Health Sys., Inc., 302 F.3d 827, 835 (8th Cir. 2002) (citation omitted). However, the plaintiff has the burden "to prove that the compared employees were similarly situated in all relevant respects." Id. (citation omitted).

Navarro asserts that he was treated worse than Tran. Navarro concludes that the fact that he was fired and Tran was not, is evidence of pretext.

The Court concludes that Navarro has failed to demonstrate a genuine issue of material fact regarding whether Bodycote's reason was pretextual. Navarro's only evidence of pretext is that he was fired and Tran was not; however, they were not similarly situated. Tran accused Navarro of spitting at him, making a threatening gesture, and destroying his property. Navarro admits that he did spit and make the gesture. Navarro did not complain to Bodycote of similar behavior by Tran. At most, Navarro testified that Tran laughed at him, but he did not complain about this behavior to management. As previously explained, a plaintiff's admitted insubordination provides a legitimate basis for termination.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

Defendant Bodycote Thermal Processing, Inc.'s Motion for Summary Judgment [Docket No. 20] is **GRANTED IN PART AND DENIED IN PART** as follows:

1.   Count One remains to the extent that it is based on failure to promote and is dismissed to the extent that it is based on Navarro's termination.

2.   Count Two remains to the extent that it is based on failure to promote and is dismissed to the extent that it is based on Navarro's termination.

3.   Count Three remains to the extent that it is based on failure to promote based on race discrimination and is dismissed to the extent that it is based on Navarro's termination and to the extent that it is based on failure to promote based on national origin discrimination.

4.   Count Four is dismissed.

5.   Count Five is dismissed.

Dated: February 27, 2007                           s / Michael J. Davis
                                                   Judge Michael J. Davis
                                                   United States District Court